UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA,** ex. rel. **JANAKI RAMADOSS, et al.,**     **Plaintiffs,** vs. **CAREMARK INC., et al.,**     **Defendants.** | No. SA 99CA0914WRF |

## CAREMARK'S MOTION FOR AN ORDER REQUIRING THE UNITED STATES TO SHOW CAUSE AND FOR CONTEMPT OF THE COURT'S PROTECTIVE ORDER, AND SUPPORTING MEMORANDUM

### FOR SUBMISSION TO SPECIAL MASTER KARL BAYER FOR RECOMMENDATION TO THE COURT

Caremark hereby moves the Court to issue an Order to Show Case why Plaintiff United States of America ("United States") should not be found in contempt of the Court's Protective Order entered on September 15, 2006 (Docket No. 182). As grounds for this Motion, Caremark states as follows:

1. On September 15, 2006, pursuant to the Special Master's recommendation, the Court entered a Protective Order. The Protective Order contained a provision governing the inadvertent production of information protected by the attorney-client privilege, work product doctrine or any other privilege. (Docket No. 182, ¶ 9.)

2. The United States recently apprised Caremark that it possesses unredacted versions of the documents bearing bates numbers CKSA000731, CKSA004791 and CKSA004779, which contain information protected by the attorney-client privilege and work

1287407.2

product doctrine. Caremark has previously asserted claims of privilege with respect to these documents.

3. Caremark, after conducting an investigation of its own records, came to the conclusion that if these documents were produced to the United States in unredacted form, such production was inadvertent. Caremark requested the immediate return of the documents pursuant to paragraph 9 of the Protective Order.

4. The United States refused to comply with the procedure in paragraph 9 of the Protective Order requiring the return of privileged documents and has therefore violated the Protective Order.

Based on the foregoing, as well as its contemporaneously filed Memorandum of Law, Caremark requests that the Special Master require the United States to show cause as to why it should not be held in contempt of Court. If the United States fails to make such a showing, Caremark asks the Special Master to recommend that the Court: (1) take action to ensure the United States' compliance with the Court's orders, (2) prohibit the United States, or any other Plaintiffs with whom the United States shared these documents, from using the information or subject matter contained in the privileged documents in discovery, dispositive motions or at trial, (3) dismiss the allegations in the United States' Complaint relating to the subject matter of the privileged documents, and (4) require the United States to compensate Caremark for the damage it has suffered as a result of the United States' contempt, including the payment of Caremark's reasonable attorneys' fees and costs for prosecuting this motion.

## **MEMORANDUM OF LAW**

### I.     Introduction

Caremark seeks an Order requiring the United States to show cause why it should not be held in contempt due to its failure to comply with the Court's Protective Order entered on September 15, 2006 (Docket No. 182). The Protective Order specifies the procedure to be used when a privileged document is inadvertently produced. In the event a privileged document is inadvertently produced, the producing party must make a written request for the return of the document. (Protective Order ¶ 9). The parties receiving such written request <u>must</u> return or destroy the document immediately. (*Id.*) (emphasis added). Failure to do so is a violation of the Protective Order.

Caremark recently learned from the United States that it possesses unredacted copies of documents bearing bates numbers CKSA000731, CKSA004791 and CKSA004779. The United States contends that it came into possession of these unredacted copies as a result of an earlier production by Caremark. If Caremark did in fact produced unredacted copies of these documents to the United States or any other plaintiff in this case, it did so inadvertently. Caremark requested the return of the documents immediately, even before the United States confirmed that it did in fact possess unredacted copies of the documents. Upon such confirmation, Caremark again requested their return in writing the very next day. In blatant disregard for the Protective Order, the United States <u>refused</u> to return the documents. Caremark gave the United States a second opportunity to comply with the Protective Order. The United States again declined to fulfill its obligation to comply with the Protective Order. Accordingly, Caremark was left with no choice but to file the present motion for an order to show cause and for contempt.

## II. Factual Background

On August 25, 1999, the Relator initiated this action by filing a complaint under seal. (Docket No. 1). Shortly thereafter, as part of its investigation of this case, the United States served a subpoena on Caremark requesting numerous documents. (Subpoena, attached as Exhibit 1). Caremark produced over 22,000 pages of documents in response to the subpoena bearing the bates label prefix CKSA. In July 2006, Caremark reproduced to all the Plaintiffs the documents it had produced in response to the United States subpoena, as well as a Civil Investigative Demand ("CID") from the State of Texas. The documents produced in response to the United States subpoena and again in July 2006 bear both the CKSA and CMK bates label. Caremark also prepared a privilege log, which it provided to Plaintiffs on September 8, 2006. (Caremark Privilege Log, attached hereto as Exhibit 2). As is evident from the privilege log, it first listed privileged documents that were withheld or produced in redacted format in response to the United States subpoena and Texas CID. (*Id.*) (listing CKSA and CKTX documents first). The log listed documents bearing CKSA000731, CKSA004791 and CKSA004779 on the first two pages. It went on to list the privileged documents withheld from the July 2006 production. (*Id.*)

On September 15, 2006, the Court entered the Protective Order, which contained the following paragraph:

> 9. In the event that a party inadvertently produces information that is protected by the attorney-client privilege, work product doctrine or any other privilege, within a reasonable time after the producing party discovers the inadvertent disclosure the producing party may make a written request to the other parties to return the inadvertently produced privileged document. All parties who received the inadvertently produced privileged document will return the document to the producing party or destroy the document immediately upon receipt of the written request. By returning or destroying the document, the receiving parties are not conceding that the document is privileged and are not waiving their right to later challenge the substantive privilege claim; except that they may not

challenge the privilege claim by arguing that the inadvertent production waived the privilege.

(Protective Order ¶ 9). The United States' counsel negotiated the terms of this Protective Order, and paragraph 9 in particular, with Caremark's counsel for several months. The United States' counsel did not propose a single amendment to this paragraph.

On October 24, 2006, the United States wrote to Caremark on behalf of the Joint Plaintiffs. In that letter, the United States claimed to possess unredacted copies of documents bearing bates numbers CKSA000731, CKSA004791 and CKSA004779. (Letter from M. Burrell to J. Weaver, dated October 24, 2006, attached as <u>Exhibit 3</u>). In that letter, the United States asserted that it received these documents as part of Caremark's production in response to the United States subpoena. (*Id.*) It also asserted that Caremark had waived any privilege or protection that might otherwise have been applicable to these documents because they were produced in response to the United States' subpoena. (*Id.*) Finally, the United States incorrectly stated that these documents were voluntarily produced because "Caremark has never claimed that these documents were produced inadvertently, nor has it requested the return of these documents at any time." (*Id.*)

On November 10, Caremark's counsel wrote a detailed letter to the United States stating:

> Our records show that these documents were not produced to the United States or any other Plaintiff. Indeed, your October 24 letter is the first time that the United States has even suggested that it possesses Caremark's privileged documents. As the documents you claim to have do not match Caremark's records of what has been produced to the United States or the other Plaintiffs, please let me know immediately if you are in possession of unredacted copies of documents bearing bates numbers CKSA000731, . . . CKSA004791, CKSA004779. Please also confirm that these documents match the descriptions of entries 3, . . . 11 and 12, respectively, on Caremark's privilege log. If you possess redacted or unredacted copies of these documents and they match the descriptions in Caremark's privilege log, then such production was inadvertent and the documents should be returned immediately.

> You claim that any applicable privilege on these documents has been waived because (a) Caremark produced the documents voluntarily, and (b) Caremark has not stated prior to this letter that the documents were produced inadvertently or requested their return. Caremark disagrees with your assertion that the applicable privileges have been waived. Paragraph 9 of the Protective Order states that "<u>within a reasonable time</u> after the producing party <u>discovers</u> the inadvertent disclosure the producing party may make a written request to the other parties to return the inadvertently produced privileged document." (Emphasis added). As previously stated, Caremark's records show that these documents were not voluntarily produced to the United States or to the other Plaintiffs. Caremark first discovered that the United States may possess documents that are listed on Caremark's privilege log through your October 24 letter. Caremark's request for the return of these documents, if they are in fact in the United States' possession, is therefore timely and the privilege has not been waived.
>
> . . .
>
> If, as you claim, documents bearing bates numbers CKSA000731, . . . CKSA004791 and CKSA004779 were produced to the United States or the Plaintiffs, such production was inadvertent. As a result, if you confirm that the United States is in possession of these documents, I expect you will return them immediately pursuant to paragraph 9 of the Protective Order. Moreover, please inform me if you have shared these documents with any of the other Plaintiffs or non-intervening states so that I may ask them to return the documents.

(Letter from J. Weaver to M. Burrell, dated November 10, 2006, attached as <u>Exhibit 4</u>).

The United States categorically refused to return the documents even though it confirmed that they were indeed the same documents that are clearly listed on Caremark's privilege log. (Letter from M. Burrell to J. Weaver, dated November 21, 2006, <u>Exhibit 5</u>).[1] Not only did it refuse to return the documents as required by the terms of the Protective Order, but the United States accused Caremark's counsel of lying. The United States wrote:

> [Y]our claim that Caremark did not know that these documents were produced in response to the subpoena <u>simply is not credible</u>. Caremark knew or should have known that any document with a CKSA bates number was produced to the United States in response to its subpoena, as Caremark produced all documents with CKSA bates numbers to the United States . . . . Since these three documents were not made available in discovery when Caremark provided documents for review and inspection by Plaintiffs in July in San Antonio, it seems apparent that

---

[1] Certain text describing the privileged information, which counsel for the United States improperly circulated amongst all counsel, has been redacted from this exhibit.

1287407.2

6

> Caremark must have pulled these documents from the CKSA production at some point prior to July 2006.

(*Id.*) (emphasis added). Finally, the United States made the far-fetched claim that it was not violating the Protective Order because paragraph 9 of the Protective Order applies only to materials produced in discovery, and not to the materials that Caremark produced in response to the United States' subpoena. (*Id.*)

> Caremark's counsel responded on November 22, 2006 that
>
> > [d]espite [the United States'] claim, there is absolutely nothing in the plain language of this provision that limits its applicability to documents produced in this case pursuant to a Rule 34 document request as opposed to a subpoena. Indeed, your colleague, Mr. Alderson, negotiated the terms of this order with me for several months, and never once proposed any amendment to section 9 that would make it inapplicable to documents produced pursuant to a subpoena.

(Letter from J. Weaver to M. Burrell, dated November 22, 2006, attached as <u>Exhibit 6</u>). Caremark's counsel again requested the immediate return or destruction of the document in accordance with the terms of the Protective Order. The United States again refused to return the documents, claiming authority to retain the documents due to "factual disputes" relating to the scope of the Protective Order and whether the documents were produced inadvertently. (Letter from M. Burrell to J. Weaver, dated November 22, 2006, attached as <u>Exhibit 7</u>).

### III.   Argument

"A court of the United States shall have power to punish by fine or imprisonment, or both, at its discretion, such contempt of its authority, [including] . . . (3) Disobedience or resistance to its lawful writ, process, order, rule, decree, or command." 18 U.S.C. § 401(b).

Federal courts also enjoy a broad inherent contempt power to ensure compliance with orders and judgments. "The traditional justification for the relative breadth of the contempt power has been necessity: Courts independently must be vested with 'power to impose …

submission to their lawful mandates . . . .'" *International Union, United Mine Workers v. Bagwell*, 512 U.S. 821, 831 (1994). "Courts thus have embraced an inherent contempt authority . . . as a power 'necessary to the exercise of all others.'" *Id.* (internal citations omitted). "Judicial sanctions in civil contempt proceedings may, in a proper case, be employed for either or both of two purposes; to coerce the defendant into compliance with the court's order, and to compensate the complainant for losses sustained." *United States v. United Mine Workers*, 330 U.S. 258, 303-04 (1947).

"In a civil contempt proceeding, the party seeking an order of contempt need only establish (1) that a court order was in effect, and (2) that the order required certain conduct by the respondent, and (3) that the respondent failed to comply with the court's order." *Positive Software Solutions, Inc. v. New Century Mortgage Corp.*, 337 F. Supp. 2d. 862, 876 (N.D. Tex. 2004) (quoting *FDIC v. LeGrand*, 43 F.3d 163, 170 (5th Cir. 1995)). Furthermore, the intent of the party disobeying a court order is irrelevant; "rather, the question is whether the alleged contemnors have complied with the court's order." *Id.* (quoting *Whitfield v. Pennington*, 832 F.2d 909, 913 (5th Cir.1987)).

In addition to coercive sanctions, a court can impose compensatory sanctions to recompense a party for damage caused by the contemnor's violation of a court order. *See Chere Amie, Inc. v. Windstar Apparel, Corp.*, 175 F. Supp. 2d 562, 567 (S.D.N.Y. 2001) (imposing *both* coercive and compensatory sanctions). The Court also may require the United States to compensate Caremark for its reasonable attorney's fees and costs for prosecuting the contempt motion, if the Court finds Plaintiff's contumacious conduct willful. *Id.* at 567-68. Indeed, where a contemnor's conduct is willful, the Court "would need to articulate persuasive grounds for any

<u>denial</u> of compensation for the reasonable legal costs for the victim of contempt." *Id.* at 568 (emphasis added).

Caremark has consistently asserted privilege over documents bearing bates numbers CKSA000731, CKSA004791 and CKSA004779. According to its records, Caremark did not produce these documents in response to the United States subpoena, the Texas subpoena or the July 2006 production. Instead, Caremark listed these documents on its privilege log. Notwithstanding Caremark's precautions, the United States appears to have an unredacted copy of each of these three documents. Shortly after this discovery, Caremark informed the United States that the production was inadvertent and has twice requested the return of the documents. The United States has twice refused to do so.

Unfortunately for the United States, it does not have a choice in this matter. Paragraph 9 of the Protective Order states that "[a]ll parties who received the inadvertently produced privileged document <u>will</u> return the document to the producing party or destroy the document immediately upon receipt of the written request." (Protective Order ¶ 9) (emphasis added). The language of the Protective Order is <u>mandatory</u>, not permissive. Yet, the United States has chosen to treat the Protective Order – an Order issued by the Court – as a voluntary order that it can disregard at its whim. Moreover, while paragraph 9 of the Protective Order allows the United States to challenge the substantive privilege claim of the inadvertently produced documents, it does not allow the United States to maintain a copy of the document while the claim is challenged. The United States cavalierly asserts that it will do exactly that. This behavior is impermissible and should be sanctioned.

The United States contends that the production of these documents could not have been inadvertent and that Caremark knew or should have known that these documents were produced

1287407.2                                          9

because they bear the CKSA bates label. The United states asserts that this "factual dispute" regarding whether the production was inadvertent gives the United States license to ignore the language of the Protective Order and retain copies of the documents. First, the United States is required to respect the producing party's claim of inadvertent production just as it is required to respect a claim of privilege until it has been <u>successfully</u> challenged and cannot retain the document in the interim. Second, while the United States may contest whether the documents were produced inadvertently, the Protective Order does not permit it to maintain a copy of the document while it does so. The Protective Order unambiguously provides that as soon as the producing party informs the other party in writing that a privileged document has been produced inadvertently, that document must be returned immediately. The United States has failed to comply with the plain language of the Protective Order and should be held in contempt.

Furthermore, the United States essentially accuses Caremark of lying by stating that Caremark's assertion that the documents were produced inadvertently "simply is not credible." However, the United States has provided no factual basis for its bald statement that all documents bearing a bates number must have been produced. This statement assumes, without evidence, that all bates numbering was done after a privilege review and thus, no privileged documents contain bates numbers. If the United States had taken the time to review Caremark's privilege log, which lists several documents identified by CKSA bates numbers, it would have realized its assumptions were incorrect. The United States has not alerted Caremark that it is in possession of unredacted copies of any of the other bates labeled documents on the privilege log.

Finally, the United States argues that paragraph 9 of the Protective Order is limited to documents produced in response to Rule 34 document requests. The plain language of the Protective Order is not so limited. Rather, it encompasses any document that is inadvertently

produced. If the United States is arguing that paragraph 9 of the Protective Order does not apply to documents produced in response to its subpoena because its subpoena is not a part of this litigation, then it is mistaken. The United States subpoena was issued as part of the United States' investigation of this case. The fact that it preceded formal discovery is irrelevant. Before the subpoena was issued, the FBI seized documents from Caremark's San Antonio facility. The task of reviewing the FBI seized documents for privilege was given Mitchell Weidenbach, an Assistant United States Attorney who has been fire-walled from other aspects of this case. This precaution undertaken by the United States itself demonstrates that the United States itself considers the FBI seized documents, the documents produced in response to the United States and the Texas subpoenas, and the documents produced in response to Rule 34 document requests to be a part of the same case. As a result, the Protective Order applies to all of these documents and must be complied with. Finally, even if the scope of the Protective Order is disputed, the United States must still return the documents until such time as the proper scope has been resolved by the Special Master or the Court.

The Special Master should recommend to the Court that it exercise its powers in this case to require the United States to comply with the plain language of the Protective Order and return documents bearing bates numbers CKSA000731, CKSA004791 and CKSA004779. There is simply no excuse for the United States' failure to comply with the simple terms of the Protective Order. The United States' actions demonstrate a contempt of the Court's orders. Furthermore, the fact that Caremark was required to file a motion to show cause in order to obtain compliance with the Protective Order is a waste of Caremark's time and resources. Caremark urges the Special Master to recommend to the Court that it use its inherent powers to 1) take action to ensure the United States' compliance with the Court's orders, (2) prohibit the United States, or

any other Plaintiffs with whom the United States shared these documents, from using the information or subject matter contained in the privileged documents in discovery, dispositive motions or at trial, and (3) require the United States to compensate Caremark for the damage it has suffered as a result of the United States' contempt, including the payment of Caremark's reasonable attorneys' fees and costs for prosecuting this motion.

Finally, Caremark is managing discovery with several Plaintiffs and at each stage of discovery, with almost every Plaintiff, Caremark has been put in the position of seeking the Special Master or the Court's assistance in obtaining Plaintiffs' compliance with Court Orders and discovery rules. This latest disregard of the plain language of the Protective Order warrants stronger sanctions. Therefore, Caremark requests that the Special Master recommend that the Court dismiss the allegations in the United States' Complaint relating to the subject matter of the privileged documents.

## IV.   Conclusion

The United States has failed to obey the terms of the Protective Order. The Special Master may recommend a broad array of sanctions and Caremark requests that he require the United States to show cause why the Court should not (1) take action to ensure the United States' compliance with the Court's orders, (2) prohibit the United States, or any other Plaintiffs with whom the United States shared these documents, from using the information or subject matter contained in the privileged documents in discovery, dispositive motions or at trial, (3) dismiss the allegations in the United States' Complaint relating to the subject matter of the privileged documents, and (4) require the United States to compensate Caremark for the damage it has suffered as a result of the United States' contempt, including the payment of Caremark's reasonable attorneys' fees and costs for prosecuting this motion.

Dated: November 22, 2006

Respectfully submitted,

By: _____
Jennifer L. Weaver
(admitted *pro hac vice*)
Charles A. Trost
(admitted *pro hac vice*)
Manisha S. Desai
(admitted *pro hac vice*)
Waller Lansden Dortch & Davis, LLP
511 Union Street, Suite 2700
Nashville City Center
Nashville, Tennessee 37219
Telephone: (615) 244-6380
Facsimile: (615) 244-6804

Charles J. Muller
State Bar No. 14649000
Farley P. Katz
State Bar No. 11108790
Merritt Clements
State Bar No. 04369500
STRASBURGER & PRICE, LLP
300 Convent Street, Suite 900
San Antonio, Texas 78205
Telephone: (210) 250-6000
Facsimile: (210) 250-6100

**ATTORNEYS FOR DEFENDANTS**