FILED

DEC 12 2006

CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, § | |
| ex. rel. JANAKI RAMADOSS, et al., § | |
| § | |
| Plaintiffs, § | |
| § | |
| v. § | No. SA 99CA0914RF |
| § | |
| CAREMARK INC., et al., § | |
| § | |
| Defendants. § | |

**SPECIAL MASTER'S RECOMMENDATIONS WITH RESPECT TO CAREMARK'S MOTION TO COMPEL RESPONSES TO SECOND SET OF INTERROGATORIES AND REQUESTS FOR DOCUMENTS AND FIRST SET OF REQUESTS FOR ADMISSIONS**

TO THE HONORABLE JUDGE FERGUSON:

Before the Special Master is Caremark's Motion to Compel Responses to Second Set of Interrogatories and Requests for Documents and First Set of Requests for Admissions. Caremark's Motion and its supplements ask the Court to compel the discovery of information pertaining to rebates received by the Government from pharmaceutical companies for prescription benefits paid by Medicaid and other governmental programs. Plaintiffs have filed responses to the Motion and its supplements, and the matter was heard in Austin, Texas on August 22 and 23, 2006. For the reasons set forth below, the Special Master recommends that the Court DENY Caremark's Motion.

Plaintiffs have sued Caremark for making false claims or reverse false claims to a number of state governments and the federal government as part of Caremark's denial

of requests for reimbursement of amounts paid by Plaintiffs as prescription drug benefits under Medicaid and other governmental programs. According to Plaintiffs, "Caremark violated the False Claims Act by illegally applying procedural plan restrictions to government requests for reimbursement – in essence, knowingly thwarting the government's ability to recoup prescription drugs [sic.] costs that should have been paid for by the private health plans administered by Caremark." Plaintiffs' Summary of the Case to Special Master Karl Bayer, at 2. Caremark, on the other hand, argues that to the extent it denied claims for reimbursement, it did so on the basis of plan restrictions which would have mandated denial had the claims been submitted by the individuals who assigned their right to recovery to the governmental program seeking reimbursement; "the plain language of the applicable statutes equates the government with the individual beneficiary by allowing the government to seek reimbursement to the extent of the plan's legal liability to the individual beneficiary." Caremark's Summary of the Case, at 3.

Caremark promulgated the discovery at issue to inquire into certain rebate programs pursuant to which the Plaintiffs received rebates from drug manufacturers in exchange for guarantees that the drugs in question would be available to governmental beneficiaries. In other words, certain drug manufacturers paid rebates to Plaintiffs against the cost of the drugs covered by Medicaid or other governmental programs, which cost Medicaid had already borne when it applied for the rebates. Plaintiffs' Response to Defendants' Motion to Compel Responses to "Rebate Discovery," at n.2; Plaintiffs' Supplemental Response to Defendants' Motion to Compel "Rebate

Discovery," at 6. The amount Medicaid pays pharmacies for prescription drugs is certain as of the date payment is made, pursuant to state-specific payment formulas. Plaintiffs' Supplemental Response to Defendants' Motion to Compel "Rebate Discovery," at 6. Medicaid rebate amounts are not identified and reported until the close of each quarter, and the drug manufacturer has up to three years after this initial report to request a recalculation. *Id.*, at 7-8. Medicaid rebate reimbursement, in other words, takes place significantly after Medicaid has paid the pharmacist for the prescription drug benefit, and it does not directly impact the amount Medicaid is required to pay individual pharmacists for the drugs.

The Court has bifurcated the trial of this matter; damages issues are not before the Court at this time. Caremark claims entitlement to the rebate information in the liability phase of the trial, however, based on its contention that the rebate information goes to the issue of whether a reimbursement obligation existed at the time the alleged false statement was made. Caremark's Brief on Obligation Requirement Under Reverse False Claims Provision, at 2. According to Caremark, it could only be required to reimburse amounts Plaintiffs actually paid for drugs under the Caremark administered plans, after rebates for those drugs had been factored in to the total. In other words, Caremark claims that the potential triggering existing obligation must be net of the rebates. Since Plaintiffs, according to Caremark, submitted gross claim amounts to Caremark (i.e. the amounts paid to the pharmacies without taking into account potential rebates from drug manufacturers tied to the dispensation of the specific drugs in question), "those claims could not have constituted a sufficiently certain obligation,"

3

and that without a sufficiently certain obligation NO STATEMENT could be false (or even true, for that matter). *Id.*, at 2-3.

The Special Master is unpersuaded by Caremark's argument. Based on the record submitted, there is no evidence that the denial of requests for reimbursement which is the basis of this action was based on Plaintiffs' submitting gross, pre-rebate requests for reimbursement. The rebate issue was apparently never a reason for Caremark's refusal to pay claims; it is an issue that has arisen subsequent to the initiation of this litigation. In this case, the Special Master, following Judge Campbell in Tennessee and without advice from this Court, the Western District or the Fifth Circuit, feels constrained to find that the relevant analysis must take place within the context of the assignment of rights which existed at the time the beneficiary requested covered goods and services. Similarly, the question of whether or not Caremark committed a violation of the False Claims Act must be evaluated with respect to the actual basis for Caremark's refusal to pay claims, not potential bases for refusal to pay claims which may have existed but which were not asserted.

This is not to say that rebate information could never be discoverable. Like Caremark, the Special Master reads Plaintiffs' briefing as a tacit admission that gross amounts, rather than rebate-netted amounts, were submitted to Caremark for reimbursement. That being the case, Caremark may well be able to assert claims making rebate information discoverable at a later stage in this litigation. Furthermore, if and to the extent Caremark can establish that the rebate issue was the basis for its refusal to reimburse at the time the refusal was made, the Special Master will revisit

4

Caremark's Motion to Compel. At this time, however, since Caremark has not asserted any counterclaims based on the rebate information, and since the rebate issue was apparently never an issue at the time Caremark actually refused to pay the claims which form the basis of this lawsuit, the Special Master fails to see how the rebate information is discoverable, given the current bifurcation[1]. A potentially valid basis for refusing to pay claims that perhaps ought to have been asserted when the claims were presented for payment does not have any bearing on whether or not the basis actually asserted for refusing to pay claims was valid. Accordingly, the Special Master RECOMMENDS that Caremark's Motion to Compel Responses to Second Set of Interrogatories and Requests for Documents and First Set of Requests for Admissions be DENIED.

DATE: *December 12, 2006*

*Karl Bayer*
KARL BAYER

---

[1] Some of Plaintiffs' own discovery requests trouble the Special Master as getting close to opening the door for discovery of rebate information even in the liability phase, and information obtained in depositions may well allow the Special Master to revisit the discoverability of rebate information.