UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| the STATE OF ARKANSAS, | ) | |
| the STATE OF CALIFORNIA, | ) | |
| the STATE OF DELAWARE, | ) | |
| the DISTRICT OF COLUMBIA, | ) | |
| the STATE OF ILLINOIS, | ) | |
| the STATE OF LOUISIANA, | ) | |
| the STATE OF MASSACHUSETTS, | ) | |
| the STATE OF TEXAS, and | ) | |
| ex rel. JANAKI RAMADOSS, | ) | |
|     Plaintiffs, | ) | CIVIL ACTION |
| | ) | NO. SA 99CA0914WRF |
| | ) | |
| v. | ) | |
| CAREMARK INC.; | ) | |
| CAREMARK INTERNATIONAL, INC.; | ) | |
| CAREMARK INTERNATIONAL | ) | |
| HOLDINGS INC.; and | ) | |
| CAREMARK Rx, INC., f/n/a | ) | |
| MEDPARTNERS INC. | ) | |
|     Defendants. | ) | |

FOR SUBMISSION TO SPECIAL MASTER KARL BAYER FOR RECOMMENDATION TO THE COURT

**UNITED STATES' POST-HEARING BRIEF IN SUPPORT OF ITS MOTION FOR AN ADVISORY OPINION ON THE STIPULATED PROTECTIVE ORDER GOVERNING THE DISCLOSURE OF HEALTH INFORMATION**

Pursuant to the instructions of the Special Master at the hearing on August 10, 2007, the United States hereby submits this Post-Hearing Brief in support of its motion for an advisory opinion on the stipulated protective order governing the disclosure of health information and in opposition to Caremark's motion for an order to show cause.

**I.    The United States is entitled to utilize Caremark's national eligibility file for the purpose of the litigation, which includes a claim for recoupment.**

As discussed in the Government's briefs in support of its motion for an advisory opinion regarding the stipulated protective order governing the disclosure of health information and in opposition to Caremark's motion for an order to show cause on the same, the United States has asserted an interest in identifying and recovering the federal portion of all Medicaid payments for dual eligible prescription claims to the extent of Caremark's legal liability.  Caremark's 2005 national eligibility file, which Caremark produced prior to the Government's intervention in this action and prior to the entry of the protective orders, and the 2007 updated national eligibility file, which Caremark produced in discovery pursuant to the HIPAA protective order, will assist the United States in identifying the third party liability claims (TPL) – the claims for which ultimate responsibility for payment lies with Caremark and the Caremark-administered private health plans.  Without utilizing the eligibility files, the United States cannot identify the complete universe of TPL claims subject to recoupment since the Government has no other reliable and comprehensive source of information for identifying all of the dual eligibles who are beneficiaries of both the Medicaid and Caremark-administered health plans.  The Caremark

national eligibility files are, therefore, by definition "for this litigation" since they are being used to identify the TPL claims for which Caremark has payment responsibility.[12]

**II.    No party to this case nor any third party has alleged that Caremark has improperly disclosed confidential health information in its possession, but even if such an allegation was pending before the Court, it would be inappropriate for the Court to order the United States to indemnify Caremark.**

On August 10, 2007, the Special Master requested that the United States comment on whether, on the Special Master's recommendation, the Court could order the United States to

---

[1] Caremark continues to draw a false distinction between Medicaid programs administered by states that have alleged state False Claims Act allegations in this lawsuit and those that have not. Whether a state is a party to this action under its own False Claims Act statute is irrelevant to the United States' right to assert the federal interest over Medicaid funds. The United States pays the federal share for all claims paid under the Texas Medicaid program, just as it pays the federal share for all claims paid under the Missouri Medicaid program. A state may not recover state money through this litigation unless it is a party to this case, but the United States has asserted an interest in recovering the federal payment for all Medicaid programs for which Caremark has reimbursement liability. The United States is therefore entitled to use the Caremark national eligibility files to identify Medicaid claims nationwide subject to recoupment, whether or not the individual state is a party to this case.

[2] Caremark attempts to create confusion by suggesting that the United States' efforts in identifying its recoupment claims in this case are somehow duplicative of the work of the state Medicaid programs. While the United States contributes the federal share to state Medicaid programs across the country and retains oversight authority over all Medicaid programs, the United States relies on the individual states for the day-to-day administration of the Medicaid program, including activities related to the reimbursement of TPL claims. The United States does not run a parallel Medicaid program separate and apart from the states and the United States cannot submit reimbursement requests for Medicaid claims directly to Caremark. All of Medicaid's administrative work is performed by the state Medicaid programs, either directly or through contractors. Caremark's assertion that the United States will receive a double recovery on Medicaid claims through its recoupment action simply has no basis in fact when the United States contributes federal funds to the Medicaid program but relies on states and its contractors for the administration of the program. This fact is illustrated by the following example: if a Medicaid program identifies a TPL claim which it then presents to Caremark and Caremark reimburses the Medicaid program in full, the claim is not the subject of the United States' common law cause of action, which seeks the recoupment of **unpaid** claims for which Caremark has legal liability. By definition, the United States cannot seek recoupment of those same claims when Caremark has already reimbursed the Medicaid program in full.

indemnify and hold harmless the Caremark entities if Caremark inadvertently produced confidential information in the eligibility file.  *See* transcript of August 10, 2007 hearing, 30:11-16.  Counsel for the United States responded to the Special Master's query at the time by stating, with qualification, that the Court probably would have the authority to grant relief to the relevant, prevailing party as it deemed appropriate under the law.  *Id* at 32:4-10.  Subsequent review of the applicable law, however, confirms that indemnification is not a remedy available at law under the set of facts presented by the Special Master.

Under the Health Insurance Portability and Accountability Act of 1996 (HIPAA), 45 C.F.R. §§ 164.102-164.534, covered entities such as Caremark are prohibited from disclosing protected health information without a patient's consent except under certain limited circumstances.  Permissible disclosure without patient consent includes disclosure in an administrative or judicial proceeding pursuant to an order of a court or an administrative tribunal.  45 C.F.R. § 164.512(e)(1)(vi).  In addition, entities subject to HIPAA are permitted to disclose protected health information to health oversight agencies such as the United States and Texas who are performing health oversight activities.  *See* 45 C.F.R. § 164.501.  The specific situation described by the Special Master assumes that a private individual could sue Caremark for Caremark's inadvertent production of confidential health information in the Caremark national eligibility file, but absent any evidence that Caremark disclosed confidential health information to an entity other than a health oversight or law enforcement agency (such as the United States and Texas), Caremark made no improper disclosure of confidential health information under HIPAA.  Accordingly, a private individual would have no basis to assert that Caremark made an improper disclosure of confidential health information.  Furthermore, even if

a private individual could make a colorable claim that Caremark had improperly disclosed protected health information, the HIPAA regulations provide no basis for a private right of action.  *See* 65 Fed. Reg. (Dec. 28, 2000) 82462, 82566 ("Comment:  Several commenters argued that individuals should be able to sue for breach of privacy.  Response: We agree, but do not have the legislative authority to grant a private right of action to sue under this statute.  Only Congress can grant that right.").  It would therefore be inappropriate for the Court to order the United States to indemnify Caremark when there is no showing that a private individual could have a viable cause of action under HIPAA against Caremark, much less any basis in fact or law that the United States owed Caremark a duty to hold Caremark harmless if a private individual sued Caremark for Caremark's alleged violations of HIPAA.

**III.    The Court does not have authority to order the United States to post a bond.**

The Special Master inquired as to whether it would be appropriate to require the United States to post a bond to protect Caremark in the event of an improper disclosure of HIPAA-protected information.  It would not.  Under the general principles of sovereign immunity, judicial power does not extend to suits against the United States unless Congress, by general or special enactment, has consented to suits against the Government.  *United States v. Clark*, 33 U.S. 436, 444 (1834).  Waivers of immunity must be strictly construed.  *Lane v. Pena*, 518 U.S. 187, 192 (1996); *United States v. Nordic Village, Inc.*, 503 U.S. 30, 32 (1992).  In the case of bonds, Congress has specifically legislated that the United States is **not** subject to security bonds.   28 U.S.C. § 2408 states:

> Security for damages or costs shall not be required of the United States, any department or agency thereof or any party acting under the direction of any such department or agency on the issuance of process or the institution or prosecution of any proceeding.

Costs taxable, under other Acts of Congress, against the United States or any such department, agency or party shall be paid out of the contingent fund of the department or agency which directed the proceedings to be instituted.

Moreover, in the context of injunctions, Fed. R. Civ. P. 65(c) holds that:

No restraining order or preliminary injunction shall issue except upon the giving of security by the applicant, in such sum as the court deems proper, for the payment of such costs and damages as may be incurred or suffered by any party who is found to have been wrongfully enjoined or restrained. **No such security shall be required of the United States or of any officer or agency thereof** (emphasis added).

The instant case is a suit filed by the United States, states, and relator alleging that Caremark violated the federal and state False Claims Acts and common law with respect to prescription expenses incurred by government health plans for dual eligibles. The only issues before the Court are: 1) whether the plaintiffs have properly asserted causes of action under the False Claims Act statutes and common law; 2) whether the plaintiffs will produce sufficient evidence to prevail on their federal and state causes of action at trial; and if so, 3) the amount of the damages and penalties the Court should award the plaintiffs. Caremark has asserted no cognizable claim under any legal theory against the United States warranting the posting of bonds, but even if Caremark had done so, the Court's authority to order the issuance of bonds against the United States as security is limited by 28 U.S.C. § 2408.

/ /

/ /

            Respectfully submitted,

            PETER D. KEISLER
            Assistant Attorney General

            JOHNNY SUTTON
            United States Attorney
            Western District of Texas

        WINSTANLEY F. LUKE
        Assistant U.S. Attorney
        Texas State Bar No. 12678710
        601 N.W. Loop 410, Ste 600
        San Antonio, Texas 78216
        Telephone (210) 384-7315
        Fax (210) 384-7322


By:    ___/s/ Allie Pang_____
        JOYCE R. BRANDA
        PATRICIA R. DAVIS
        STANLEY E. ALDERSON
        ALLIE PANG
        MEREDITH BURRELL
        ANDREA J. LARRY
        Attorneys, Civil Division
        U.S. Department of Justice
        P.O. Box 261
        Ben Franklin Station
        Washington, D.C. 20044
        Telephone (202) 514-6846
        Fax (202) 305-4117

        ATTORNEY FOR THE UNITED STATES

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing United States' Post-hearing Brief in Support of its Motion for an Advisory Opinion on the Stipulated Protective Order Governing the Disclosure of Health Information was served by the Court's Notice of Electronic Filing system on August 24, 2007, on the counsel identified below.

/s/ Allie Pang

CHARLES J. MULLER
FARLEY KATZ
MERRITT CLEMENTS
Strasburger & Price, LLP
300 Convent Street, Suite 900
San Antonio, Texas  78205
**Attorneys for Defendants**

BILL MOSS
Assistant Attorney General
Antitrust & Civil Medicaid Fraud Division
Office of the Attorney General
P.O. Box 12548
Austin, Texas 78711-2548
**Attorneys for the State of Texas**

TOM WATKINS
WALTER MIZELL
LORINDA HOLLOWAY
Brown McCarroll, LLP
111 Congress Ave, Suite 1400
Austin, TX  78701
**Attorneys for Janaki Ramadoss**

JENNIFER L . WEAVER
Waller Lansden Dortch & Davis LLP
511 Union Street, Suite 2700
Nashville, Tennessee 37219
**Attorneys for Defendants**

MARLENE M. MARTIN
Law Office of Marlene M. Martin
One Elm Place
11107 Wurzbach Road #305
San Antonio, TX  78230
**Attorney for Janaki Ramadoss**

CHARLES C. FOTI, JR.
Attorney General of Louisiana
FRED DUHY
JIM MURRAY
Office of Attorney General of Louisiana
Medicaid Fraud Control Unit
P.O. Box 94005
Baton Rouge, LA  70804
1885 N. 3rd
Baton Rouge, LA  70802
**Attorneys for the State of Louisiana**

| | |
|---|---|
| BILL LOCKYER<br>Attorney General of California<br>SIOBHAN FRANKLIN<br>ADELINA BERUMEN<br>Bureau of Medi-Cal Fraud and Elder Abuse<br>California Department of Justice<br>1455 Frazee Road, Suite 315<br>San Diego, CA  92108<br>**Attorneys for the State of California** | VALERIE KELLY<br>Assistant Attorney General<br>Medicaid Fraud Control Unit<br>Office of the Attorney General of Arkansas<br>1100 Catlett-Prien Tower<br>Little Rock Arkansas 72201<br>**Attorney for the State of Arkansas** |

SPECIAL MASTER KARL BAYER
Attorney at Law
8911 N. Capital of Texas Highway
Suite 2120
Austin, TX 79759